

## POTTER HANDY, LLP

A Law Firm

| | |
|---|---|
| 100 Pine St., Ste. 1250 | Mark Potter |
| San Francisco CA 94111 | Mark@potterhandy.com |
| | Phone: (858) 375-7385 |

## NOTICE OF CONSENT TO ELECTRONIC SERVICE

To Whom it May Concern:

Please take notice that pursuant to Cal. Code of Civil Procedure § 1010.6 (as amended 2021), our office consents to electronic service of process for documents pertaining to the case in which this document was served, provided the following procedures are followed:

1. Any document served, in addition to an attorney of record on the matter, must be emailed to serve@potterhandy.com.
2. If the document is being served in response to a document received from, or filed by, our office — such as a motion or discovery response — the individual who signed the motion or discovery request to which you are responding must be included in the list of recipients.
3. The e-mail should clearly note in the subject the documents being served (e.g. "Electronic Service of Defendant's Answer")

This is an optional avenue of service available to anyone preferring to utilize electronic service as allowed by California law. We will of course continue to accept service by other traditional means provided for by law.

Should you wish to accept electronic service, please provide the e-mail addresses for the individuals that may be served to serve@potterhandy.com.

Respectfully submitted,

Mark Potter

**POTTER HANDY LLP**
Mark D. Potter (SBN 166317)
mark@potterhandy.com
James M. Treglio (SBN 228077)
jimt@potterhandy.com
100 Pine St., Ste 1250
San Francisco, CA 94111
Tel: (415) 534-1911
Fax: (888) 422-5191

Attorneys for Plaintiffs Dan Cohen and Mayra Mendez, on behalf of himself and all others similarly situated,

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## FOR THE COUNTY OF LOS ANGELES

DANIEL COHEN, MAYRA MENDEZ, on behalf of themselves and all others similarly situated,

Plaintiffs,

vs.

POSTMEDS, INC., a Delaware Corporation; and DOES 1 through 100, inclusive,

Defendants.

) **CLASS ACTION CASE NO.**
) **23STCV28038**
)
) **FIRST AMENDED CLASS COMPLAINT**
) **FOR DAMAGES AND INJUNCTIVE**
) **RELIEF (FOR VIOLATIONS OF:**
)
) (1) **THE CONFIDENTIALITY OF**
)     **MEDICAL INFORMATION ACT,**
)     **CIVIL CODE §§ 56, *ET SEQ*.);**
) (2) **CALIFORNIA UNFAIR**
)     **COMPETITION LAW, Cal. Bus. &**
)     **Prof. Code §17200, *et seq*.**
)
) **DEMAND FOR JURY TRIAL**
)
)

1    Class Representative Plaintiffs Daniel Cohen and Mayra Mendez ("Plaintiffs"), by and

2    through their attorneys, individually and on behalf of others similarly situated, allege upon

3    information and belief as follows:

## I.

## **INTRODUCTION**

6    1.    Under the Confidentiality of Medical Information Act, Civil Code §§ 56, *et seq.*

7    (hereinafter referred to as the "Act"), Plaintiffs and all other persons similarly situated, had a right

8    to keep their personal medical information provided to Defendant Postmeds, Inc. ("Postmeds" or

9    "Defendant") confidential.  The short title of the Act states, "The Legislature hereby finds and

10   declares that persons receiving health care services have a right to expect that the confidentiality

11   of individual identifiable medical information derived by health service providers be reasonably

12   preserved.   It is the intention of the Legislature in enacting this act, to provide for the

13   confidentiality of individually identifiable medical information, while permitting certain

14   reasonable and limited uses of that information." The Act specifically provides that "a provider of

15   health care, health care service plan, or contractor shall not disclose medical information regarding

16   a patient of the provider of health care or an enrollee or subscriber of a health care service plan

17   without first obtaining an authorization...." Civil Code. § 56.10(a).  The Act further provides that

18   "Every provider of health care, health care service plan, pharmaceutical company, or contractor

19   who creates, maintains, preserves, stores, abandons, destroys, or disposes of medical records shall

20   do so in a manner that preserves the confidentiality of the information contained therein. Any

21   provider of health care, health care service plan, pharmaceutical company, or contractor who

22   negligently creates, maintains, preserves, stores, abandons, destroys, or disposes of medical

23   records shall be subject to the remedies ... provided under subdivisions (b) ... of Section 56.36."

24   Civil Code § 56.101(a).

25   2.    Civil Code § 56.36(b) provides Plaintiffs, and all other persons similarly situated,

26   with a private right to bring an action against Defendant for violation of Civil Code § 56.101 by

27   specifically providing that "[i]n addition to any other remedies available at law, any individual may

28   bring an action against any person or entity who has negligently released confidential information

1

First Amended Class Action Complaint

1  or records concerning him or her in violation of this part, for either or both of the following: (1) ...

2  nominal damages of one thousand dollars ($1,000). In order to recover under this paragraph, *it shall*

3  *not be necessary that the plaintiff suffered or was threatened with actual damages.* (2) The amount

4  of actual damages, if any, sustained by the patient." (Emphasis added.) Here, the release of

5  information to third parties in litigation for subrogation purposes without so much as a subpoena

6  clearly violates the requirements of this statute.

7       3.     This class action is brought on behalf of Plaintiffs and a putative class defined as all

8  customers of Defendant whose prescription orders were fulfilled at one of Defendant's locations

9  and whose personal medical information were released to third parties without authorization ("the

10  "Class," or the "Class Members").

11      4.     As alleged more fully below, Defendant created, maintained, preserved, and stored

12  Plaintiffs and the Class members' personal medical information onto the Defendant's computer

13  network prior to August 31, 2023. Due to Defendant's mishandling of personal medical information

14  recorded onto the Defendant's computer network, there was an unauthorized release of Plaintiffs'

15  and the Class members' confidential medical information that occurred between on or about August

16  30, 2023 and September 1, 2023, in violation of Civil Code § 56.101 of the Act.

17      5.     As alleged more fully below, Defendant negligently created, maintained, preserved,

18  and stored Plaintiffs' and the Class members' confidential medical information in a non-encrypted

19  format onto a data server which became accessible to an unauthorized person, without Plaintiffs'

20  and the Class members' prior written authorization. This act of providing unauthorized access to

21  Plaintiffs' and the Class Members' confidential medical information onto the internet continuously

22  constitutes an unauthorized release of confidential medical information in violation of Civil Code §

23  56.101 of the Act. Because Civil Code § 56.101 allows for the remedies and penalties provided

24  under Civil Code § 56.36(b), Class Representative Plaintiffs, individually and on behalf of others

25  similarly situated, seek nominal damages of one thousand dollars ($1,000) for each violation under

26  Civil Code § 56.36(b)(1). Additionally, Class Representative Plaintiffs, individually and on behalf

27  of others similarly situated, seek injunctive relief for unlawful violations of Business and

28  Professions Code §§ 17200, *et seq.*

2

First Amended Class Action Complaint

6.      Class Representative Plaintiffs do not seek any relief greater than or different from the relief sought for the Class of which Plaintiffs are members. The action, if successful, will enforce an important right affecting the public interest and would confer a significant benefit, whether pecuniary or non-pecuniary, for a large class of persons.  Private enforcement is necessary and places a disproportionate financial burden on Class Representative Plaintiffs in relation to Class Representative Plaintiffs' stake in the matter.

## II.

## JURISDICTION AND VENUE

7.      This Court has jurisdiction over this action under California Code of Civil Procedure § 410.10.  The aggregated amount of damages incurred by Plaintiffs and the Class exceeds the $25,000 jurisdictional minimum of this Court.  The amount in controversy as to the Plaintiffs individually and each individual Class member does not exceed $75,000, including interest and any pro rata award of attorneys' fees, costs, and damages.  Venue is proper in this Court under California Bus. & Prof. Code § 17203, Code of Civil Procedure §§ 395(a) and 395.5 because Defendant is headquartered in the State of California and does business in the County of Los Angeles.  Defendant has obtained medical information in the transaction of business in the County of Los Angeles, which has caused both obligations and liability of Defendant to arise in the County of Los Angeles.

## III.

## PARTIES

A.    PLAINTIFFS

8.      Class Representative Plaintiff Daniel Cohen is a resident of the State of California. At all times relevant, Plaintiff was a customer of Defendant who had his prescription orders fulfilled through one of the pharmacies owned and/or operated by Defendant. Plaintiff received pharmaceutical services from Defendant, and was a patient, as defined by Civil Code § 56.05(k). Plaintiff's individual identifiable medical information derived by Defendant in electronic form was in possession of Defendant, including but not limited to Plaintiff's medical history, mental or physical condition, or treatment, including diagnosis and treatment dates.  Such medical information included or contained an element of personal identifying information sufficient to allow

3

First Amended Class Action Complaint

1   identification of the individual, such as Plaintiff's name, date of birth, addresses, medical record

2   number, insurance provider, electronic mail address, telephone number, or social security number,

3   or other information that, alone or in combination with other publicly available information, reveals

4   Plaintiff's identity. Since receiving treatment at Defendant's facilities, Plaintiff has received

5   numerous solicitations by mail from third parties at an address he only provided to Defendant.

6        9.     Class Representative Plaintiff Mayra Mendez is a resident of the State of California.

7   At all times relevant, Plaintiff was a customer of Defendant who had her prescription orders fulfilled

8   through one of the pharmacies owned and/or operated by Defendant. Plaintiff received

9   pharmaceutical services from Defendant, and was a patient, as defined by Civil Code § 56.05(k).

10   Plaintiff's individual identifiable medical information derived by Defendant in electronic form was

11   in possession of Defendant, including but not limited to Plaintiff's medical history, mental or

12   physical condition, or treatment, including diagnosis and treatment dates.  Such medical information

13   included or contained an element of personal identifying information sufficient to allow

14   identification of the individual, such as Plaintiff's name, date of birth, addresses, medical record

15   number, insurance provider, electronic mail address, telephone number, or social security number,

16   or other information that, alone or in combination with other publicly available information, reveals

17   Plaintiff's identity. Since receiving treatment at Defendant's facilities, Plaintiff has received

18   numerous solicitations by mail from third parties at an address she only provided to Defendant.

19        10.     PLAINTIFFS received from Defendant a notification that their personal medical

20   information and their personal identifying information were disclosed when an unauthorized person

21   gained access to Defendant's servers.

22   **B.**     **DEFENDANT**

23        11.     Defendant Postmeds, Inc. is a corporation registered in Delaware. It is a pharmacy

24   company that fulfills prescription orders. Its principal place of business is located at 3121 Diablo

25   Avenue, Hayward, CA 94545.  Defendant operates throughout the State of California including in

26   Los Angeles County in California. At all times relevant, Defendant is a "provider of health care" as

27   defined by Civil Code § 56.05(m).

28        12.     Prior to August 30, 2023, Defendant created, maintained, preserved, and stored

4

1  Plaintiffs' and the Class members' individually identifiable medical information onto Defendant's

2  computer network, including but not limited to Plaintiffs' and the Class members' medical history,

3  mental or physical condition, or treatment, including diagnosis and treatment dates.  Such medical

4  information included or contained an element of personal identifying information sufficient to allow

5  identification of the individual, such as Plaintiffs' and the Class members' names, dates of birth,

6  addresses, medical record numbers, insurance providers, electronic mail addresses, telephone

7  numbers, or social security numbers, or other information that, alone or in combination with other

8  publicly available information, reveals Plaintiffs' and the Class members' identities.

9  **C.    DOE DEFENDANTS**

10      13.    The true names and capacities, whether individual, corporate, associate, or otherwise,

11  of Defendants sued herein as DOES 1 through 100, inclusive, are currently unknown to the

12  Plaintiffs, who therefore sue the Defendants by such fictitious names under the Code of Civil

13  Procedure § 474.  Each of the Defendants designated herein as a DOE is legally responsible in some

14  manner for the unlawful acts referred to herein.  Plaintiffs will seek leave of court and/or amend this

15  complaint to reflect the true names and capacities of the Defendants designated hereinafter as DOES

16  1 through 100 when such identities become known.  Any reference made to a named Defendant by

17  specific name or otherwise, individually or plural, is also a reference to the actions or inactions of

18  DOES 1 through 100, inclusive.

19  **D.    AGENCY/AIDING AND ABETTING**

20      14.    At all times herein mentioned, Defendants, and each of them, were an agent or joint

21  venturer of each of the other Defendants, and in doing the acts alleged herein, were acting with the

22  course and scope of such agency.  Each Defendant had actual and/or constructive knowledge of the

23  acts of each of the other Defendants, and ratified, approved, joined in, acquiesced and/or authorized

24  the wrongful acts of each co-defendant, and/or retained the benefits of said wrongful acts.

25      15.    Defendants, and each of them, aided and abetted, encouraged, and rendered

26  substantial assistance to the other Defendants in breaching their obligations to Plaintiffs and the

27  Class, as alleged herein.  In taking action, as particularized herein, to aid and abet and substantially

28  assist the commissions of these wrongful acts and other wrongdoings complained of, each of the

5

First Amended Class Action Complaint

1  Defendants acted with an awareness of his/her/its primary wrongdoing and realized that his/her/its

2  conduct would substantially assist the accomplishment of the wrongful conduct, wrongful goals,

3  and wrongdoing.

4                                          **IV.**

5                              **FACTUAL ALLEGATIONS**

6  **A.      The Data Breach**

7        16.    On or around October 30, 2023, Defendant issued a letter (the "Notice") to

8  individuals, including Plaintiffs, providing information for the first time about "a cybersecurity

9  incident involving some of that information" in Defendant's care.

10        17.    In the Notice, Defendant notified consumers that "on August 31, 2023, we

11  discovered that a bad actor gained access to a subset of files used for pharmacy management and

12  fulfillment services."

13        18.    On or about October 30, 2023, 2023, Defendant sent the Notice stating that "Our

14  investigation determined that the bad actor accessed the files between August 30, 2023 to September

15  1, 2023."  (the "Data Breach")

16        19.    The Notice went on to say that as a result of the review, it was determined that some

17  of Plaintiffs' and the Class Members' information may have been involved. Defendant confirmed

18  that some of Plaintiffs' information were present in the files that were illegally accessed from

19  Defendant's server.  Defendant failed to state in its Notice when it identified that Plaintiffs'

20  information was included in the Data Breach.

21        20.    Yet, despite knowing many patients were in danger, Defendant did nothing to warn

22  Breach Victims until two months after it discovered the Data Breach and after the actual date of the

23  Data Breach, an unreasonable amount of time under any objective standard. During this time, cyber

24  criminals had free reign to surveil and defraud their unsuspecting victims. Defendant apparently

25  chose to complete its internal investigation and develop its excuses and speaking points before

26  giving class members the information they needed to protect themselves against fraud and identity

27  theft.

28

6

First Amended Class Action Complaint

21.    During its investigation, Defendant determined that "One or more of those files contained your name and prescription information. The information varied by individual, but may have included medication type, demographic information, and/or prescribing physician."

22.    This was a staggering coup for cyber criminals and a stunningly bad showing for Defendant.

23.    It is apparent from Defendant's Notice that the Personal and Medical information contained within the server was not encrypted.

24.    In spite of the severity of the Data Breach, Defendant has done very little to protect Breach Victims. In the Notice, Defendant states that "We also encourage you to regularly review your information for accuracy, as a best practice, including information you receive from your healthcare providers." In effect, shirking its responsibility for the harm it has caused and putting it all on the Breach Victims.

25.    Defendant failed to adequately safeguard Plaintiffs' and Class members' Personal and Medical Information, allowing cyber criminals to access this wealth of priceless information and use it for about two months before Defendant warned the criminals' victims, the Breach Victims, to be on the lookout.

26.    Defendant failed to spend sufficient resources on monitoring external incoming emails and training its employees to identify email-born threats and defend against them.

27.    Defendant had obligations created by the Health Insurance Portability and Accountability Act ("HIPAA"), the Confidentiality of Medical Information Act ("CMIA"), reasonable industry standards, its own contracts with its patients and employees, common law, and its representations to Plaintiffs and Class members, to keep their Personal and Medical Information confidential and to protect the information from unauthorized access.

28.    Plaintiffs and Class members provided their Personal and Medical Information to Defendant with the reasonable expectation and mutual understanding that Defendant would comply with its obligations to keep such information confidential and secure from unauthorized access.

29.    Indeed, as discussed below, Defendant promised Plaintiffs and Class members that it would do just that.

7

**B.    Defendant Expressly Promised to Protect Personal and Medical Information**

30.    Defendant provides all customers, including Plaintiffs and Class members, its Notice of Privacy Practices, which states that:

- We are required by law to maintain the privacy and security of your protected health information.
- We will let you know promptly if a breach occurs that may have compromised the privacy or security of your information.
- We must follow the duties and privacy practices described in this notice and give you a copy of it.
- We will not use or share your information other than as described here unless you tell us we can in writing. If you tell us we can, you may change your mind at any time. Let us know in writing if you change your mind.[1]

31.    Notwithstanding the foregoing assurances and promises, Defendant failed to protect the Personal and Medical Information of Plaintiffs and other Class members from cyber criminals using relatively unsophisticated means to dupe its patients, as conceded in the Notice to the Breach Victims.

32.    If Defendant truly understood the importance of safeguarding patients' Personal and Medical Information, it would acknowledge its responsibility for the harm it has caused, and would compensate class members, provide long-term protection for Plaintiffs and the Class, agree to Court-ordered and enforceable changes to its cybersecurity policies and procedures, and adopt regular and intensive training to ensure that a data breach like this never happens again.

33.    Defendant's data security obligations were particularly important given the known substantial increase in data breaches in the healthcare industry, including the recent massive data breach involving HCA Healthcare, Regal Medical Group, Independent Living Systems Health, UHC San Joaquin Valley, PracticeMax, Lincare, Illuminate Education, Horizon Actuarial Services, Partnership HealthPlan of California, Bako Diagnostics, Rite Aid, Discovery Practice Management, Fairchild Medical Center, Scripps Health, HealthNet, LabCorp, Quest Diagnostics, and American Medical Collections Agency. And given the wide publicity given to these data breaches, there is no

---

[1] Postmeds, "Notice of HIPAA Privacy Practices," Effective June 24, 2021, https://www.truepill.com/legal/nopp, last visited on November 14, 2023.

First Amended Class Action Complaint

excuse for Defendant's failure to adequately protect Plaintiffs' and Class members' Personal and Medical Information.

34.     That information is now in the hands of cyber criminals who will use it if given the chance. Much of this information is unchangeable and loss of control of this information is remarkably dangerous to consumers.

**C.     Defendant had an Obligation to Protect Personal and Medical Information under Federal and State Law and the Applicable Standard of Care**

35.     Defendant is an entity covered by HIPAA (45 C.F.R. § 160.102). As such, it is required to comply with the HIPAA Privacy Rule and Security Rule, 45 C.F.R. Part 160 and Part 164, Subparts A and E ("Standards for Privacy of Individually Identifiable Health Information"), and Security Rule ("Security Standards for the Protection of Electronic Protected Health Information), 45 C.F.R. Part 160 and Part 164, Subparts A and C.

36.     HIPAA's Privacy Rule or *Standards for Privacy of Individually Identifiable Health Information* establishes national standards for the protection of health information.

37.     HIPAA's Security Rule or *Security Standards for the Protection of Electronic Protected Health Information* establishes a national set of security standards for protecting health information that is held or transferred in electronic form.

38.     HIPAA requires Defendant to "comply with the applicable standards, implementation specifications, and requirements" of HIPAA "with respect to electronic protected health information." 45 C.F.R. § 164.302.

39.     "Electronic protected health information" is "individually identifiable health information . . . that is (i) Transmitted by electronic media; maintained in electronic media." 45 C.F.R. § 160.103.

40.     HIPAA's Security Rule requires Defendant to do the following:

    a. Ensure the confidentiality, integrity, and availability of all electronic protected health information the covered entity or business associate creates, receives, maintains, or transmits;

9

b. Protect against any reasonably anticipated threats or hazards to the security or integrity of such information;

c. Protect against any reasonably anticipated uses or disclosures of such information that are not permitted; and

d. Ensure compliance by its workforce.

41.    HIPAA also required Defendant to "review and modify the security measures implemented . . . as needed to continue provision of reasonable and appropriate protection of electronic protected health information." 45 C.F.R. § 164.306(e).

42.    HIPAA also required Defendant to "[i]mplement technical policies and procedures for electronic information systems that maintain electronic protected health information to allow access only to those persons or software programs that have been granted access rights." 45 C.F.R. § 164.312(a)(1).

43.    The HIPAA Breach Notification Rule, 45 CFR §§ 164.400-414, also required Defendant to provide notice of the breach to each affected individual "without unreasonable delay and *in no case later than 60 days following discovery of the breach*."[2]

44.    Defendant was also prohibited by the Federal Trade Commission Act ("FTC Act") (15 U.S.C. §45) from engaging in "unfair or deceptive acts or practices in or affecting commerce." The Federal Trade Commission ("FTC") has concluded that a company's failure to maintain reasonable and appropriate data security for consumers' sensitive personal information is an "unfair practice" in violation of the FTC Act. *See, e.g., FTC v. Wyndham Worldwide Corp.*, 799 F.3d 236 (3d Cir. 2015).

45.    As described before, Defendant is also required (by the CMIA and various other states' laws and regulations) to protect Plaintiffs' and Class members' Personal and Medical Information, and further, to handle any breach of the same in accordance with applicable breach notification statutes.

---

[2] Breach Notification Rule, U.S. Dep't of Health & Human Services, https://www.hhs.gov/hipaa/for professionals/breach-notification/index.html (emphasis added).

First Amended Class Action Complaint

46.     In addition to their obligations under federal and state laws, Defendant owed a duty to Breach Victims whose Personal and Medical Information was entrusted to Defendant to exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting, and protecting the Personal and Medical Information in its possession from being compromised, lost, stolen, accessed, and misused by unauthorized persons.  Defendant owed a duty to Breach Victims to provide reasonable security, including consistency with industry standards and requirements, and to ensure that its computer systems and networks, and the personnel responsible for them, adequately protected the Personal and Medical Information of the Breach Victims.

47.     Defendant owed a duty to Breach Victims whose Personal and Medical Information was entrusted to Defendant to design, maintain, and test its computer systems and email system to ensure that the Personal and Medical Information in Defendant's possession was adequately secured and protected.

48.     Defendant owed a duty to Breach Victims whose Personal and Medical Information was entrusted to Defendant to create and implement reasonable data security practices and procedures to protect the Personal and Medical Information in their possession, including adequately training its employees and others who accessed Personal Information within its computer systems on how to adequately protect Personal and Medical Information.

49.     Defendant owed a duty to Breach Victims whose Personal and Medical Information was entrusted to Defendant to implement processes that would detect a breach on its data security systems in a timely manner.

50.     Defendant owed a duty to Breach Victims whose Personal and Medical Information was entrusted to Defendant to act upon data security warnings and alerts in a timely fashion.

51.     Defendant owed a duty to Breach Victims whose Personal and Medical Information was entrusted to Defendant to adequately train and supervise its employees to identify and avoid any phishing emails that make it past its email filtering service.

52.     Defendant owed a duty to Breach Victims whose Personal and Medical Information was entrusted to Defendant to disclose if its computer systems and data security practices were inadequate to safeguard individuals' Personal and Medical Information from theft because such an

11

1  inadequacy would be a material fact in the decision to entrust Personal and Medical Information

2  with Defendant.

3      53.    Defendant owed a duty to Breach Victims whose Personal and Medical Information

4  was entrusted to Defendant to disclose in a timely and accurate manner when data breaches

5  occurred.

6      54.    Defendant owed a duty of care to Breach Victims because they were foreseeable and

7  probable victims of any inadequate data security practices.

8  **D.    A Data Breach like Defendant's Results in Debilitating Losses to Consumers**

9      55.    Each year, identity theft causes tens of billions of dollars of losses to victims in the

10 United States.[3] Cyber criminals can leverage Plaintiffs' and Class members' Personal and Medical

11 Information that was stolen in the Data Breach to commit thousands-indeed, millions-of additional

12 crimes, including opening new financial accounts in Breach Victims' names, taking out loans in

13 Breach Victims' names, using Breach Victims' names to obtain medical services and government

14 benefits, using Breach Victims' Personal Information to file fraudulent tax returns, using Breach

15 Victims' health insurance information to rack up massive medical debts in their names, using Breach

16 Victims' health information to target them in other phishing and hacking intrusions based on their

17 individual health needs, using Breach Victims' information to obtain government benefits, filing

18 fraudulent tax returns using Breach Victims' information, obtaining driver's licenses in Breach

19 Victims' names but with another person's photograph, and giving false information to police during

20 an arrest. Even worse, Breach Victims could be arrested for crimes identity thieves have committed.

21     56.    Personal and Medical Information is such a valuable commodity to identity thieves

22 that once the information has been compromised, criminals often trade the information on the cyber

23 black-market for years.

24     57.    This was a financially motivated data breach, as the only reason cyber criminals stole

25 Plaintiffs' and the Class members' Personal and Medical Information from Defendant was to engage

26

27 _____

28 [3] "Facts + Statistics: Identity Theft and Cybercrime," Insurance Info.    Inst., https://www.iii.org/fact-statistic/facts-statistics-identity-theft-and-cybercrime (discussing Javelin Strategy & Research's report "2018 Identity Fraud: Fraud Enters a New Era of Complexity").

First Amended Class Action Complaint

1  in the kinds of criminal activity described above, which will result, and has already begun to, in

2  devastating financial and personal losses to Breach Victims.

3    58.    This is not just speculative. As the FTC has reported, if hackers get access to Personal

4  and Medical Information, they *will* use it.[4]

5    59.    Hackers may not use the information right away. According to the U.S. Government

6  Accountability Office, which conducted a study regarding data breaches:

> [I]n some cases, stolen data may be held for up to a year or more before being used
> to commit identity theft. Further, once stolen data have been sold or posted on the
> Web, fraudulent use of that information **may continue for years**. As a result, studies
> that attempt to measure the harm resulting from data breaches cannot necessarily rule
> out all future harm.[5]

60.    For instance, with a stolen social security number, someone can open financial

accounts, get medical care, file fraudulent tax returns, commit crimes, and steal benefits.[6] Identity

thieves can also use the information stolen from Breach Victims to qualify for expensive medical

care and leave them and their contracted health insurers on the hook for massive medical bills.

61.    Medical identity theft is one of the most common, most expensive, and most difficult

to prevent forms of identity theft. According to Kaiser Health News, "medical-related identity theft

accounted for 43 percent of all identity thefts reported in the United States in 2013," which is more

"than identity thefts involving banking and finance, the government and the military, or education."[7]

62.    "Medical identity theft is a growing and dangerous crime that leaves its victims with

little to no recourse for recovery," reported Pam Dixon, executive director of World Privacy Forum.

"Victims often experience financial repercussions and worse yet, they frequently discover erroneous

information has been added to their personal medical files due to the thief's activities."[8]

---

[4] Ari Lazarus, *How fast will identity thieves use stolen info?*, FED. TRADE COMM'N (May 24, 2017), https://www.consumer.ftc.gov/blog/2017/05/how-fast-will-identity-thieves-use-stolen-info.

[5] *Data Breaches Are Frequent, but Evidence of Resulting Identity Theft Is Limited; However, the Full Extent Is Unknown*, GAO, July 5, 2007, https://www.gao.gov/assets/270/262904.htmlu (emphasis added).

[6] *See, e.g.*, Christine Di Gangi, *5 Ways an Identity Thief Can Use Your Social Security Number*, Nov. 2, 2017, https://blog.credit.com/2017/11/5-things-an-identity-thief-can-do-with- your-social-security-number-108597/.

[7] Michael Ollove, "The Rise of Medical Identity Theft in Healthcare," Kaiser Health News, Feb. 7, 2014, https://khn.org/news/rise-of-indentity-theft/.

[8] *Id.*

First Amended Class Action Complaint

63.    As indicated by Jim Trainor, second in command at the FBI's cyber security division: "Medical records are a gold mine for criminals—they can access a patient's name, DOB, Social Security and insurance numbers, and even financial information all in one place. Credit cards can be, say, five dollars or more where PHI can go from $20 say up to—we've seen $60 or $70 [(referring to prices on dark web marketplaces)]."[9] A complete identity theft kit that includes health insurance credentials may be worth up to $1,000 on the black market.[10]

64.    If, moreover, the cyber criminals also manage to steal financial information, credit and debit cards, health insurance information, driver's licenses, and passports there is no limit to the amount of fraud that Defendant has exposed the Breach Victims to.

65.    A study by Experian found that the average total cost of medical identity theft is "about $20,000" per incident, and that a majority of victims of medical identity theft were forced to pay out-of-pocket costs for healthcare they did not receive in order to restore coverage.[11] Almost half of medical identity theft victims lose their healthcare coverage as a result of the incident, while nearly one-third saw their insurance premiums rise, and forty percent were never able to resolve their identity theft at all.[12]

66.    As described above, identity theft victims must spend countless hours and large amounts of money repairing the impact to their credit.[13]

67.    The danger of identity theft is compounded when a minor's Personal and Medical Information is compromised because minors typically have no credit reports to monitor. Thus, it can

---

[9] ID Experts, *You Got It, They Want It: Criminals Targeting Your Private Healthcare Data, New Ponemon Study Shows*, https://www.idexpertscorp.com/knowedge-center/single/you-got-it-they-want-it-criminals-are-targeting-your-private-healthcare-dat

[10] *Managing cyber risks in an interconnected world*, PRICEWATERHOUSECOOPERS: Key findings from The Global State of Information Security Survey 2015,https://www.pwc.com/gx/en/consulting-services/information-security-survey/assets/the-global- state-of-information-security-survey-2015.pdf

[11] *See* Elinor Mills, "Study: Medical Identity Theft is Costly for Victims," CNET (Mar, 3, 2010), https://www.cnet.com/news/study-medical-identity-theft-is-costly-for-victims/.

[12] *Id.*; *see also Healthcare Data Breach: What to Know About them and What to Do After One*, EXPERIAN, https://www.experian.com/blogs/ask-experian/healthcare-data-breach-what-to-know-about-them-and-what-to-do-after-one/.

[13] "Guide for Assisting Identity Theft Victims," Federal Trade Commission, 4 (Sept. 2013), http://www.consumer.ftc.gov/articles/pdf-0119-guide-assisting-id-theft-victims.pdf.

14

First Amended Class Action Complaint

1  be difficult to monitor because a minor cannot simply place an alert on their credit report or "freeze"

2  their credit report when no credit report exists.

3       68.    Even a limited-time offer of free credit monitoring would be insufficient. While some

4  harm has begun already, the worst may be yet to come. There may be a time lag between when harm

5  occurs versus when it is discovered, and also between when Personal and Medical Information is

6  stolen and when it is used. In any case, credit monitoring only alerts someone to the fact that they

7  have already been the victim of identity theft (*i.e.*, fraudulent acquisition and use of another person's

8  Personal and Medical Information)—it does not prevent identity theft.[14] This is especially true for

9  many kinds of medical identity theft, for which most credit monitoring plans provide little or no

10 monitoring or protection.

11      69.    As a direct and proximate result of the Data Breach, Plaintiffs and the Class have

12 been placed at an imminent, immediate, and continuing increased risk of harm from fraud and

13 identity theft. Plaintiffs and the Class must now take the time and effort to mitigate the actual and

14 potential impact of the Data Breach on their everyday lives, including placing "freezes" and "alerts"

15 with credit reporting agencies, contacting their financial institutions, healthcare providers, closing

16 or modifying financial accounts, and closely reviewing and monitoring bank accounts, credit

17 reports, and health insurance account information for unauthorized activity for years to come.

18      70.    Plaintiffs and the Class have suffered, and continue to suffer, actual harms for which

19 they are entitled to compensation, including:

20          a. Trespass, damage to, and theft of their personal property including Personal and

21          Medical Information;

22          b. Improper disclosure of their Personal and Medical Information;

23          c. The imminent and certainly impending injury flowing from potential fraud and identity

24          theft posed by their Personal and Medical Information being placed in the hands of

25          criminals and having been already misused;

26

27

28 [14] *See, e.g.*, Kayleigh Kulp, *Credit Monitoring Services May Not Be Worth the Cost*, Nov. 30, 2017,
   https://www.cnbc.com/2017/11/29/credit-monitoring-services-may-not-be-worth-the- cost.html.

First Amended Class Action Complaint

d. The imminent and certainly impending risk of having their confidential medical information used against them by spam callers to defraud them;

e. Damages flowing from Defendant's untimely and inadequate notification of the data breach;

f. Loss of privacy suffered as a result of the Data Breach, including the harm of knowing cyber criminals have their Personal and Medical Information and that fraudsters have already used that information to initiate spam calls to members of the Class;

g. Ascertainable losses in the form of out-of-pocket expenses and the value of their time reasonably expended to remedy or mitigate the effects of the data breach;

h. Ascertainable losses in the form of deprivation of the value of customers' personal information for which there is a well-established and quantifiable national and international market;

i. The loss of use of and access to their credit, accounts, and/or funds;

j. Damage to their credit due to fraudulent use of their Personal and Medical Information; and

k. Increased cost of borrowing, insurance, deposits, and other items which are adversely affected by a reduced credit score.

71.    Moreover, Plaintiffs and the Class have an interest in ensuring that their information, which remains in the possession of Defendant, is protected from further breaches by the implementation of security measures and safeguards.

72.    Despite acknowledging the harm caused by the Data Breach on Plaintiffs and Class members, Defendant does nothing to reimburse Plaintiffs and Class members for the injuries they have already suffered.

## V.

## CLASS ACTION ALLEGATIONS

73.    Class Representative Plaintiffs bring this action on their own behalf and on behalf of all other persons similarly situated.  The putative class that Class Representative Plaintiffs seek to represent is composed of:

16

First Amended Class Action Complaint

All customers of Defendant whose prescription orders were fulfilled at one of Defendant's locations and whose personal medical information were released to third parties without authorization (hereinafter the "Class").

Excluded from the Class are the natural persons who are directors, and officers, of the Defendant. Class Representative Plaintiffs expressly disclaim that they are seeking a class-wide recovery for personal injuries attributable to Defendant's conduct.

74.    Plaintiffs are informed and believe that the total number of Class Members involves thousands of persons, and as such, the members of the Class are so numerous that joinder of all members is impracticable.  While the exact number of the Class members is unknown to Class Representative Plaintiffs at this time, such information can be ascertained through appropriate discovery, from records maintained by Defendant.

75.    There is a well-defined community of interest among the members of the Class because common questions of law and fact predominate, Class Representative Plaintiffs' claims are typical of the members of the class, and Class Representative Plaintiffs can fairly and adequately represent the interests of the Class.

76.    Common questions of law and fact exist as to all members of the Class and predominate over any questions affecting solely individual members of the Class.   Among the questions of law and fact common to the Class are:

(a)    Whether Defendant failed to adequately safeguard Plaintiffs' and the Class' Personal and Medical Information;

(b)    Whether Defendant failed to protect Plaintiffs' and the Class' Personal and Medical Information;

(c)    Whether Defendant's email and computer systems and data security practices used to protect Plaintiffs' and the Class' Personal and Medical Information violated the FTC Act, HIPAA, CMIA, and/or Defendant's other duties;

(d)    Whether Defendant violated the data security statutes and data breach notification statutes applicable to Plaintiffs and the Class;

(e)    Whether Defendant failed to notify Plaintiffs and members of the Class about the Data Breach expeditiously and without unreasonable delay after the Data Breach was discovered;

(f)    Whether Defendant engaged in unfair, unlawful, or deceptive practices by failing to safeguard Breach Victims' Personal and Medical Information properly and as promised;

(g)    Whether Defendant acted negligently in failing to safeguard Plaintiffs' and the Class'

17

Personal and Medical Information, including whether its conduct constitutes negligence *per se*;

(h) Whether Defendant entered into implied contracts with Plaintiffs and the members of the Class that included contract terms requiring Defendant to protect the confidentiality of Personal and Medical Information and have reasonable security measures;

(i) Whether Defendant violated the consumer protection statutes, data breach notification statutes, and state medical privacy statutes applicable to Plaintiffs and the Class;

(j) Whether Defendant failed to notify Plaintiffs and Breach Victims about the Data Breach as soon as practical and without delay after the Data Breach was discovered;

(k) Whether Defendant's conduct described herein constitutes a breach of their implied contracts with Plaintiffs and the Class;

(l) Whether Plaintiffs and the members of the Class are entitled to damages as a result of Defendant's wrongful conduct;

(m) What equitable relief is appropriate to redress Defendant's wrongful conduct; and

(n) What injunctive relief is appropriate to redress the imminent and currently ongoing harm faced by Plaintiffs and members of the Class.

Class Representative Plaintiffs' claims are typical of those of the other Class members because Class Representative Plaintiffs, like every other Class member, were exposed to virtually identical conduct and are entitled to nominal damages of one thousand dollars ($1,000) per violation pursuant to Civil Code §§ 56.101 and 56.36(b)(1).

77.    Class Representative Plaintiffs will fairly and adequately protect the interests of the Class. Moreover, Class Representative Plaintiffs have no interest that is contrary to or in conflict with those of the Class they seek to represent during the Class Period. In addition, Class Representative Plaintiffs have retained competent counsel experienced in class action litigation to further ensure such protection and intend to prosecute this action vigorously.

78.    The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class, which would establish incompatible standards of conduct for the Defendant in the State of California and would lead to repetitious trials of the numerous common questions of fact and law in the State of California. Class Representative Plaintiffs know of no difficulty that will be encountered in the management of this litigation that would preclude its maintenance as a class action. As a result, a

18

First Amended Class Action Complaint

1  class action is superior to other available methods for the fair and efficient adjudication of this

2  controversy.

3      79.    Proper and sufficient notice of this action may be provided to the Class members

4  through direct mail.

5      80.    Moreover, the Class members' individual damages are insufficient to justify the cost

6  of litigation, so that in the absence of class treatment, Defendant's violations of law inflicting

7  substantial damages in the aggregate would go unremedied without certification of the Class.

8  Absent certification of this action as a class action, Class Representative Plaintiffs and the members

9  of the Class will continue to be damaged by the unauthorized release of their individual identifiable

10  medical information.

**VI.**

**CAUSES OF ACTION**

**FIRST CAUSE OF ACTION**
**(Violations of the Confidentiality of Medical Information Act, Civil Code § 56, *et seq.*)**
(Against All Defendants)

15      81.    Plaintiffs and the Class incorporate by reference all of the above paragraphs of this

16  Complaint as though fully stated herein.

17      82.    Defendant is a "provider of health care," within the meaning of Civil Code §

18  56.05(m), and maintained and continues to maintain "medical information," within the meaning of

19  Civil Code § 56.05(j), of "patients" of the Defendant, within the meaning of Civil Code § 56.05(k).

20      83.    Plaintiffs and the Class are "patients" of Defendant within the meaning of Civil Code

21  § 56.05(k).  Furthermore, Plaintiffs and the Class, as patients of Defendant, had their individually

22  identifiable "medical information," within the meaning of Civil Code § 56.05(j), stored onto

23  Defendant's server, and had their prescription orders fulfilled at one of the locations served by

24  Defendant on or before August 30, 2023.

25      84.    On or about October 30, 2023, Defendant determined that the illegally accessed files

26  involved Plaintiffs' and the Class members' individual identifiable "medical information," within

27

28

19

First Amended Class Action Complaint

the meaning of Civil Code § 56.05(j),[15] including Plaintiffs and the Class members' "name and prescription information. … medication, type, demographic information, and/or prescribing physician."

85.    Defendant was made aware of an unusual activity involving certain of its electronic files. Defendant immediately commenced an investigation to quickly assess the security of its systems. Through the investigation, Defendant determined that certain files were accessed and acquired between on or about August 30, 2023 to September 1, 2023 without authorization. During its investigation, Defendant determined that the information of certain individuals were present in the relevant files.

86.    As a result of Defendant's above-described conduct, Plaintiffs and the Class have suffered damages from the unauthorized release of their individual identifiable "medical information" made unlawful by Civil Code §§ 56.10 and 56.101.

87.    Because Civil Code § 56.101 allows for the remedies and penalties provided under Civil Code § 56.36(b), Plaintiffs, individually and on behalf of the Class, seek nominal damages of one thousand dollars ($1,000) for each violation under Civil Code § 56.36(b)(1); and Plaintiffs individually seek actual damages suffered, if any, pursuant to Civil Code § 56.36(b)(2).

## SECOND CAUSE OF ACTION
### (Violations of the CALIFORNIA UNFAIR COMPETITION LAW, Cal. Bus. & Prof. Code §17200, *et seq.*)

88.    Plaintiffs incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

89.    Defendant is registered in California. Defendant violated California's Unfair Competition Law ("UCL"), Cal. Bus. Prof. Code § 17200, *et seq.*, by engaging in unlawful, unfair,

---

[15] Pursuant to Civil Code § 56.05(j), "Medical information" means "any individually identifiable information, in electronic or physical form, in possession of or derived from a provider of health care…regarding a patient's medical history, mental or physical condition, or treatment. 'Individually Identifiable' means that the medical information includes or contains any elements of personal identifying information sufficient to allow identification of the individual, such as the patient's name, address, electronic mail address, telephone number, or social security number, or other information that, alone or in combination with other publicly available information, reveals the individual's identity." As alleged herein, Defendant's unencrypted server contained Plaintiffs' and the Class members' names, dates of birth, and prescription information, and thus contained individually identifiable medical information as defined by Civil Code § 56.05(j)

or fraudulent business acts and practices and unfair, deceptive, untrue, or misleading advertising that constitute acts of "unfair competition" as defined in the UCL, including, but not limited to, the following:

    a.  by representing and advertising that it would maintain adequate data privacy and security practices and procedures to safeguard their Personal and Medical Information from unauthorized disclosure, release, data breach, and theft; representing and advertising that they did and would comply with the requirement of relevant federal and state laws pertaining to the privacy and security of the Class' Personal and Medical Information; and omitting, suppressing, and concealing the material fact of the inadequacy of the privacy and security protections for the Class' Personal and Medical Information;

    b.  by soliciting and collecting Class members' Personal and Medical Information with knowledge that the information would not be adequately protected; and by storing Plaintiffs' and Class members' Personal and Medical Information in an unsecure electronic environment;

    c.  by violating the privacy and security requirements of HIPAA, 42 U.S.C. §1302d, *et seq.*; and

    d.  by violating the CMIA, Cal. Civ. Code § 56, *et seq.*

90.    These unfair acts and practices were immoral, unethical, oppressive, unscrupulous, unconscionable, and/or substantially injurious to Plaintiffs and Class members. Defendant's practice was also contrary to legislatively declared and public policies that seek to protect consumer data and ensure that entities who solicit or are entrusted with personal data utilize appropriate security measures, as reflected by laws like the FTC Act, 15 U.S.C. § 45, HIPAA, 42 U.S.C. § 1302d, *et seq.*, and CMIA, Cal. Civ. Code § 56, *et seq.*

91.    As a direct and proximate result of Defendant's unfair and unlawful practices and acts, Plaintiffs and the Class were injured and lost money or property, including but not limited to the overpayments Defendant received to take reasonable and adequate security measures (but did

21

First Amended Class Action Complaint

1   not), the loss of their legally protected interest in the confidentiality and privacy of their Personal

2   and Medical Information, and additional losses described above.

3        92.    Defendant knew or should have known that its computer systems and data security

4   practices were inadequate to safeguard Plaintiffs' and Class members' Personal and Medical

5   Information and that the risk of a data breach or theft was highly likely. Defendant's actions in

6   engaging in the above-named unfair practices and deceptive acts were negligent, knowing, and

7   willful, and/or wanton and reckless with respect to the rights of the Class.

8        93.    The conduct and practices described above emanated from California where

9   decisions related to Defendant's advertising and data security were made.

10       94.    Plaintiffs seek relief under the UCL, including restitution to the Class of money or

11   property that the Defendant may have acquired by means of Defendant's deceptive, unlawful, and

12   unfair business practices, declaratory relief, attorney fees, costs, and expenses (pursuant to Cal.

13   Code Civ. P. § 1021.5), and injunctive or other equitable relief.

14                     **PRAYER FOR RELIEF**

15        WHEREFORE, Plaintiffs respectfully request the Court to grant Plaintiffs and the Class

16   members the following relief against Defendant:

17        a.    An order certifying this action as a class action under Code of Civil Procedure §382,

18   defining the Class as requested herein, appointing the undersigned as Class counsel, and finding that

19   Plaintiffs are proper representatives of the Class requested herein;

20        b.    A judgment in favor of Plaintiffs and the Class awarding them appropriate monetary

21   relief, including actual and statutory damages, including statutory damages under the CMIA,

22   punitive damages, attorney fees, expenses, costs, and such other and further relief as is just and

23   proper.

24        c.    An order providing injunctive and other equitable relief as necessary to protect the

25   interests of the Class as requested herein, including, but not limited to:

26              i.    Ordering that Defendant engage third-party security auditors/penetration

27                    testers as well as internal security personnel to conduct testing, including

28                    simulated attacks, penetration tests, and audits on Defendant's systems on a

First Amended Class Action Complaint

1  periodic basis, and ordering Defendant to promptly correct any problems or

2  issues detected by such third-party security auditors;

3      ii.    Ordering that Defendant engage third-party security auditors and internal

4  personnel to run automated security monitoring;

5      iii.    Ordering that Defendant audit, test, and train their security personnel

6  regarding any new or modified procedures;

7      iv.    Ordering that Defendant's segment customer data by, among other things,

8  creating firewalls and access controls so that if one area of Defendant's

9  systems is compromised, hackers cannot gain access to other portions of

10  Defendant's systems;

11      v.    Ordering that Defendant purge, delete, and destroy in a reasonably secure

12  manner customer data not necessary for its provisions of services;

13      vi.    Ordering that Defendant conduct regular database scanning and securing

14  checks;

15      vii.    Ordering that Defendant routinely and continually conduct internal training

16  and education to inform internal security personnel how to identify and

17  contain a breach when it occurs and what to do in response to a breach; and

18      viii.    Ordering Defendant to meaningfully educate its current, former, and

19  prospective employees and subcontractors about the threats they face as a

20  result of the loss of their financial and personal information to third parties,

21  as well as the steps they must take to protect themselves.;

22      d.    An order requiring Defendant to pay the costs involved in notifying the Class

23  members about the judgment and administering the claims process;

24      e.    A judgment in favor of Plaintiffs and the Class awarding them pre-judgment and

25  post-judgment interest, reasonable attorneys' fees, costs, and expenses as allowable by law,

26  including the UCL, Cal. Bus. & Prof. Code § 17082, CMIA, Cal. Civ. Code 56.35; and

27      f.    An award of such other and further relief as this Court may deem just and proper.

28

First Amended Class Action Complaint

POTTER HANDY LLP

/s/ James M. Treglio

Dated: November 30, 2023          By: _____
Mark D. Potter, Esq.
James M. Treglio, Esq.
Attorneys for the Plaintiffs and the Class

## DEMAND FOR JURY TRIAL

Plaintiffs and the Class hereby demand a jury trial on all causes of action and claims with respect to which they have a right to jury trial.

POTTER HANDY LLP

/s/ James M. Treglio

Dated: November 30, 2023          By: _____
Mark D. Potter, Esq.
James M. Treglio, Esq.

Attorneys for the Plaintiffs and the Class

24

First Amended Class Action Complaint

# PROOF OF SERVICE

Cohen v. Postmeds, Inc., et. al.
Case No.: 23STCV28038

I, the undersigned, am over the age of eighteen years and am resident of San Diego County, California; I am not a party to the above-entitled action; my business address is 100 Pine St., Ste 1250, San Francisco, CA 94111.

On November 30, 2023, I served the following document(s):

1. **PLAINTIFF'S FIRST AMENDED COMPLAINT.**

Addressed to:

Postmeds, Inc.
Registered Agent for Service of Process
CSC - LAWYERS INCORPORATING SERVICE
2710 Gateway Oaks Dr # 150, Sacramento, CA 95833

☑   <u>BY USPS MAIL:</u> I caused such envelope with postage thereon fully prepaid to be placed in the United States mail at San Diego, California.

☐   <u>BY FACSIMILE:</u> In addition to the service by mail as set forth above, I forwarded a copy of said documents via facsimile to the listed facsimile number.

☐   <u>BY OVERNITE EXPRESS:</u> I caused such envelope with postage thereon fully prepaid to be placed in the Designated Overnite Express drop box at San Diego, California.

☐   <u>BY PERSONAL SERVICE:</u> I caused said documents to be personally served on all listed recipients via Ace Attorney Services.

☐   <u>BY ELECTRONIC MAIL TRANSMISSION:</u> I caused the listed documents to be electronically filed and subsequently emailed to the recipient(s).

Executed November 30, 2023  from San Diego, California.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

/s/ James M. Treglio

_____

James M. Treglio

25

First Amended Class Action Complaint



$2.040
US POSTAGE
FIRST-CLASS
062S0014950513
FROM 77546

Parkinson Benson Potter
1410 E. Winding Way Ste B
Friendswood Tx 77546

Postmeds, Inc.
CSC- LAWYERS INCORPORATING SERVICE
2710 Gateway Oaks Dr # 150,
Sacramento, CA 95833